**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHERINE RUBERY,** | : | |
| **on behalf of herself and all others** | : | |
| **similarly situated** | : | |
| | : | |
| **v.** | : | **CIV. NO. 07-1068** |
| | : | |
| **RADIAN GROUP, INC. et al** | : | |

Diamond, J.                                                                                                    May 30, 2007

**M E M O R A N D U M**

        In this purported class action, I must determine whether to dismiss outright or remand to state

court pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  15 U.S.C.

§ 78bb(f).  I conclude that SLUSA requires remand.

**I.        BACKGROUND**

        On February 5, 2007, financial services provider Radian Group, Inc., a Delaware corporation,

announced that it would merge with MGIC Investment Corporation.  Plaintiff Catherine Rubery, a

holder of Radian common stock, filed this action under Delaware state law in the Philadelphia

Common Pleas Court, and seeks to prosecute the action on behalf of Radian's stockholders.  Ms.

Rubery alleges that Radian and its directors and officers breached their fiduciary duties when they

agreed to the merger without soliciting other bids and when they used inside information improperly

to benefit themselves.

Defendants removed the case to this Court pursuant to SLUSA and then moved to dismiss, contending that SLUSA preempts Plaintiff's claims.  See 15 U.S.C. § 78bb(f)(1), (2); Fed. R. Civ. P. 12(b)(6).  Plaintiff in turn has moved to remand, arguing that I may not dismiss because SLUSA does not apply to this class action, and that even if SLUSA applies, the lawsuit falls within SLUSA's preservation clause.  See 15 U.S.C. § 78bb(f)(3).

## II.      WHETHER SLUSA APPLIES TO THIS LAWSUIT.

### A.      Legal Standards

Congress passed SLUSA to make federal courts the primary venue for securities class actions, and so prevent the circumvention of rigorous federal pleading requirements by the filing of class actions in state court.  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1510-11 (2006); see 15 U.S.C. § 78u-4(b) (setting out pleading requirements).  Thus, SLUSA preempts "covered class actions" that are based on state law and that allege "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1).  "A 'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people.  A 'covered security' is one traded nationally and listed on a regulated national exchange."  Dabit, 126 S. Ct. at 1512 (internal footnotes omitted); see 15 U.S.C. § 78bb(f)(5). Finally, I am obligated to remand back to state court those covered actions that fall within SLUSA's preservation clause.  15 U.S.C. § 78bb(f)(3)(D).

### B.      Whether This Lawsuit Is A "Covered Class Action."

Plaintiff contends that this lawsuit is not a "covered class action" because her Complaint does not explicitly provide that she is seeking "damages."  (Doc. No. 8 at 6-7; Doc. No. 14.)  The Third Circuit has held, however, that SLUSA

> creates an express exception to the well-pleaded complaint rule....  No matter how an action is pleaded, if it is a 'covered class action ... involving a covered security,' removal is proper. ... [SLUSA's] preemptive force cannot be circumvented by artful drafting.

Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 298-304 (3d Cir. 2005); see also Jaffee v. United States, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."). Accordingly, I must look beyond the face of her Complaint to determine the nature of relief Plaintiff actually seeks in this action.

Although Plaintiff has submitted an affidavit in which she states that she is not seeking "damages," her Complaint includes a demand for "[i]mposition of a constructive trust, in favor of Plaintiff, upon any benefits improperly received by defendants as a result of their wrongful conduct...." (Compl. at 12.)  Plaintiff has stated that, her affidavit notwithstanding, she continues to seek the imposition of a "constructive trust." (5/11/07 Tr. at 3.)  Although dressed in the language of equity, this is a demand for money.  Numerous courts have applied SLUSA to similar, "equitable" actions.  In Feitelberg v. Merrill Lynch & Co., Inc., the court reasoned that the plaintiff's demands for "restitution" and "disgorgement of defendants' illegally obtained profits" constituted claims for "damages" under SLUSA:

> Although plaintiffs may have not overtly tried to circumvent SLUSA, the higher pleading standard established by PSLRA makes it appealing to do so.  The legislative history of SLUSA clearly suggests that the statute was enacted to deal with the temptation class action plaintiffs have to plead around SLUSA; thus, the statute should be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.

234 F. Supp. 2d 1043, 1049 (N.D. Cal. 2002).  The court in Gibson v. PS Group Holdings similarly reasoned that if it did not apply SLUSA to a complaint including only claims for equitable relief,

> a class action plaintiff could file a state court complaint seeking only injunctive and declaratory relief, avoid removal to federal court, pursue massive discovery in state court, then amend its complaint at a later date to add a prayer for compensatory damages.

2000 WL 777818, at *4 (S.D. Cal. June 14, 2000); see also Bertram v. Terayon Communications Sys., 2001 WL 514358, at *2-3 (C.D. Cal. Mar. 27, 2001) (demand for "restitution" is a demand for damages under SLUSA).  But see Shen v. Bohan, 2002 WL 31962136, at *2-3 (C.D. Cal. Oct. 17, 2002) (SLUSA does not apply because the lawsuit is not a "covered class action" and "there is no evidence that the plaintiffs are fraudulently pleading to circumvent SLUSA"); Wald v. C.M. Life Ins. Co., 2001 WL 256179, at *5-6 (N.D. Tex. Mar. 08, 2001) (lawsuit is not a "covered class action" when plaintiff sought only declaratory and injunctive relief and where there was "simply no indication that Plaintiff is attempting to manipulate the system").

Employing the reasoning of these courts, I conclude that the instant case is a "covered class action."  Under SLUSA, Plaintiff's demand for a "constructive trust" is tantamount to a demand for "damages."  Moreover, it appears that the relief Plaintiff seeks here is primarily financial: during a conference in this matter, Plaintiff stated she could well seek to amend her Complaint to include an explicit claim for money damages.  (5/11/07 Tr. at 4.)  The Gibson Court anticipated the likely result here:  Plaintiff could amend her artfully drawn complaint to add a demand for cash damages after I decline to apply SLUSA.  Like the Gibson Court, I do not believe SLUSA allows such manipulative tactics.  2000 WL 777818, at *4.  Accordingly, I conclude that the instant case is a "covered class action" under SLUSA.

## C.    Whether SLUSA Applies To A Lawsuit Brought On Behalf Of Shareholders.

SLUSA applies to any class action in which a private party alleges "a misrepresentation or

omission of material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). Plaintiff contends that SLUSA does not apply here because she has brought suit on behalf of "holders" of Radian stock, not "purchasers" or "sellers." (Doc. No. 8 at 7-8.) Surely, this is a distinction without a difference. The Supreme Court observed: "[f]or purposes of SLUSA pre-emption, that distinction is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 126 S. Ct. 1503, 1515 (2006). Rather, courts will look to the gravamen of the challenged action itself:

> Under our precedents, it is enough that the fraud alleged "coincide" with a securities transaction – whether by the plaintiff or by someone else. The requisite showing, in other words, is "deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller."

Dabit, 126 S. Ct. at 1513 (internal citation removed); see also In re Edward Jones Holders Litig., 453 F. Supp. 2d 1210, 1215 (C.D. Cal. 2006) (to determine whether claims were in connection with the purchase or sale of securities, court looked to "the gravamen of Plaintiffs' Complaint" and not at identity of plaintiffs as holders of stock).

Here, Plaintiff has based her allegations exclusively on the proposed merger of Radian and MGIC. Plaintiff alleges that Defendants breached their fiduciary duties by "choosing not to provide shareholders with all information necessary to make an informed decision" respecting the merger with MGIC, purposely avoiding a bid solicitation before agreeing to the merger, and failing properly to value Radian in connection with the merger. (Compl. at 4, 6, 10.) In thus basing her Complaint on the Radian-MGIC merger, Plaintiff has necessarily brought an action "in connection with the purchase or sale of a covered security":

> It is well established that the share exchange accompanying the merger of two separate and distinct corporate entities, pursuant to which shareholders in one or both of the original entities exchange their shares for shares in the surviving or newly created corporation, constitutes a 'purchase or sale' [under the federal securities laws].

In re Penn Cent. Sec. Litig., 494 F.2d 528, 533 (3d Cir. 1974).  Indeed, in her Motion to Remand, Plaintiff states that she "challenges Defendants' improper conduct in connection with their efforts to complete the *sale* of Radian to MGIC."  (Doc. No. 8 at 9 (emphasis added).)

In these circumstances, SLUSA preempts this covered class action.  Accordingly, unless this action falls within SLUSA's preservation clause, I am obligated to dismiss.

## III.   WHETHER THIS LAWSUIT FALLS WITHIN THE REQUIREMENTS OF SLUSA'S PRESERVATION CLAUSE.

### A.   Legal Standard

SLUSA's preservation clause – often called the "Delaware carve-out" – provides as follows:

> (i) Notwithstanding [the preemption and removal provisions of SLUSA,] a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated ... may be maintained in a State or Federal court by a private party.

> (ii) A covered class action is described in this clause if it involves ... any recommendation, position, or other communication with respect to the sale of securities of an issuer that – (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A).

If, following removal from state court, a federal court determines that the covered action meets the requirements of the carve-out, the federal court must remand the action to state court.  15

U.S.C. § 78bb(f)(3)(D).

**B.     Whether The Preservation Clause Applies To A Class Action Brought Against A Delaware Corporation In Pennsylvania State Court.**

Defendants contend that the Delaware carve-out does not apply to actions brought outside the state of incorporation of the securities issuer.  Thus, because Radian (the "issuer" of Radian stock) is incorporated in Delaware, and Plaintiff filed suit in Pennsylvania, Defendants believe the suit does not come within the scope of the carve-out.

SLUSA itself does not include a venue restriction.  Rather, it requires only that a securities action plaintiff bring her claim in "a State ... court," and base her claim on the law of the state in which the issuer is incorporated.  15 U.S.C. § 78bb(f)(3)(A)(i).  That is precisely what Plaintiff has done here.  Defendants nonetheless look to SLUSA's legislative history to support their contention that limiting venue to the states where the subject companies are incorporated is desirable and was intended by Congress.  See S. Rep. 105-182, 1998 WL 226714, at *6 (1998); H.R. Conf. Rep. 105-803, 1998 WL 703964, at *14 n.2 (1998).  The Supreme Court has cautioned, however, "appeals to statutory history are well taken only to resolve 'statutory ambiguity.'"  Barnhill v. Johnson, 503 U.S. 393, 401 (1992).  The absence of a venue provision in SLUSA is not ambiguity.  On the contrary, it demonstrates that Congress chose not to restrict venue.  In these circumstances, I will not use Defendants' selective offerings of SLUSA's legislative history to read into the statute a venue limitation that Congress could have put there, but did not.  See Decristofaro v. May Dept. Stores Co., 2005 WL 1528260, at *3 (E.D. Mo. June 28, 2005); Gibson v. PS Group Holdings, Inc., 2000 WL 777818, at *6 (S.D. Cal. June 14, 2000).

**C.     Whether This Lawsuit Involves A Communication Within The Meaning Of The Delaware Carve-Out.**

To fall within the carve-out, this class action must involve "any recommendation, position, or other communication with respect to the sale of securities" of Radian that "is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer," and "concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights."  15 U.S.C. § 78bb(f)(3)(A).

Plaintiff alleges that on February 5, 2007, Radian and MGIC jointly issued a press release announcing the merger.  (Compl. at 5.)  The press release stated in pertinent part:

> [Curt S. Culver, current chairman and CEO of MGIC, stated] 'We will take a deliberate, methodical approach to integrating our companies, making certain ... that our shareholders realize the potential benefits of this merger.' ... [Defendant S.A. Ibrahim stated] 'I am confident the new MGIC Radian Financial Group will emerge as a premier U.S. and international mortgage insurer and credit enhancement provider, delivering superior shareholder returns.... The transaction has been unanimously approved by each company's board of directors and is expected to be completed in the fourth quarter of 2007, subject to regulatory and shareholder approvals. ... To Radian, on a GAAP basis the transaction is expected to be 4.7 percent accretive to Radian's earnings per share in 2008 and 8.2 percent accretive to Radian's earnings per share in 2009.  As part of the transaction, it currently is expected MGIC Radian Financial Group will initially pay a dividend of $.025 per share per quarter, which ... represents an increase of $0.23 per share per quarter for Radian shareholders.

(Id. at 5-6.)  Plaintiff contends that this press release is a "communication" within the meaning of the carve-out.  Defendants disagree, arguing that Plaintiff's lawsuit does not sufficiently "involve" the press release, that the press release was not made directly to Radian's shareholders, and that the press release does not concern the decisions of the shareholders with respect to voting their securities.

Although few courts have applied this provision of SLUSA, it is apparent that Radian's press release falls within the scope of the Delaware carve-out.  The press release relates directly to

Plaintiff's allegations respecting the propriety and desirability of the Radian-MGIC merger. Although Defendants issued the press release to the general public, they plainly wrote it to encourage Radian's shareholders to approve the proposed merger. It provides: (1) that "superior shareholder returns" will result from the proposed merger, and includes a comparison between the pre-merger and post-merger value of Radian's shares; and (2) that the merger is subject to shareholder approval. Defendants correctly note that Plaintiff nowhere explicitly alleges that the press release itself includes material misrepresentations or omissions. Plaintiff repeatedly alleges, however, that "Defendants made false and/or misleading statements that failed to properly inform Plaintiff and other stockholders of the true nature of the [MGIC merger]." (Pl. Mem. at 2; see also Compl. at paras. 23, 31, 33.) The press release – which Plaintiff quotes in full in her Complaint – is the only statement from Defendants mentioned in the Complaint. Thus, a liberal reading of Plaintiff's allegations suggests her belief that Defendants used a false and misleading press release to induce Radian's shareholders to approve the proposed merger. See Fed. R. Civ. P. 8(a); City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998) ("courts have an obligation ... to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable").

In these circumstances, Radian's press release is not distinguishable from other press releases that have been found to fall within the Delaware carve-out. See, e.g., Greaves v. McAuley, 264 F. Supp. 2d 1078, 1083 (N.D. Ga. 2003) (press release that was intended to encourage shareholders to approve a proposed merger met the carve-out requirements); Alessi v. Beracha, 244 F. Supp. 2d 354, 358-59 (D. Del. 2003) (press release that suggested benefits to participants of a buyout program offered by the corporation to its stockholders met the carve-out requirements); see also Superior

Partners v. Chang, 471 F. Supp. 2d 750, 754-55 (S.D. Tex. 2007) ("Merely because a copy of the preliminary proxy statement is not physically mailed to shareholders does not exclude it from being a 'communication' [for SLUSA purposes]."). This authority persuades me that the press release and this case fall within the Delaware carve-out. Accordingly, I remand this action to state court.

## IV.   WHETHER PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS.

Finally, Plaintiff has asked for an award of attorney fees and costs in connection with the removal of this case. (Doc. No. 8 at 10.) Because I am remanding the case to the state court, I may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has cautioned that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704, 711 (2005).

Although I disagree with Defendants' construction of a part of the Delaware carve-out, their construction of SLUSA was not unreasonable. In these circumstances, Defendants had an objectively reasonable basis to remove. Accordingly, I will not award attorney fees to Plaintiff.

An appropriate Order follows.


BY THE COURT.

/s Paul S. Diamond, J.

_____

Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHERINE RUBERY,** | : | |
| **on behalf of herself and all others** | : | |
| **similarly situated** | : | |
| | : | |
| **v.** | : | **CIV. NO. 07-1068** |
| | : | |
| **RADIAN GROUP, INC. et al** | : | |

## O R D E R

AND NOW, this 30th day of May, 2007, it is ORDERED that:

(1)    Defendants' Motion to Dismiss is **DENIED**;

(2)    Plaintiff's Motion to Remand is **GRANTED** and this civil action is **REMANDED**

to the Court of Common Pleas of Philadelphia County; and

(3)    Plaintiff's request for attorney fees and costs is **DENIED**.

The Clerk's Office shall close this case for statistical purposes.


IT IS SO ORDERED.

*/s Paul S. Diamond, J.*

_____

Paul S. Diamond, J.